IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

VIRGIL BEATTY and
MELISSA BEATTY,

        Plaintiffs,

v.                //   CIVIL ACTION NO. 1:16CV91
                        (Judge Keeley)

ESURANCE PROPERTY AND CASUALTY
INSURANCE COMPANY and ESURANCE
INSURANCE SERVICES, INC.,

        Defendants.

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47] AND DENYING
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 49]

The question presented by the parties' pending motions for summary judgment is whether the defendants are obligated to provide underinsured motorist coverage to the plaintiffs with regard to damages incurred during a May 2015 vehicle accident. Concluding that they are not, the Court **GRANTS** the defendants' motion for summary judgment (Dkt. No. 47), and **DENIES** the plaintiffs' motion for partial summary judgment (Dkt. No. 49).

**I.**

Many of the facts in this case are not in dispute. In late 2014, the plaintiffs, Virgil and Melissa Beatty (collectively, "the Beattys"), began searching for a new automobile insurance carrier to replace their existing policy with National General that was set to expire on December 25, 2014 (Dkt. No. 48-1 at 45-46). After obtaining quotes from several companies, on December 24, 2014, Mrs.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47] AND DENYING
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 49]**

Beatty began an online application with the defendants, Esurance Property and Casualty Insurance Company and Esurance Insurance Services, Inc. (collectively, "Esurance"). Id. at 27, 48. During the online application, Mrs. Beatty provided the Beattys' driver's license numbers, driving histories, and vehicle information. She also created an online account using her e-mail address, which she intended to use again to renew the policy. Id. at 47-50. At some point during the application process, Mrs. Beatty placed Mr. Beatty's electronic signature on a Credit Card Authorization, which authorized a charge for $522.86 and acknowledged that "Esurance will notify me via email of the dates and amount of any future and renewal payments" (Dkt. Nos. 48-1 at 54-57; 48-4).

That same day, Mr. Beatty called an Esurance representative to discuss the quote that the Beattys had received online (Dkt. No. 48-3). After speaking with Mrs. Beatty about the additional information he received from the representative, Mr. Beatty called again to complete the application and pay for the policy by telephone (Dkt. No. 48-2 at 65). The coverage that Mr. Beatty purchased included "uninsured and underinsured motorist bodily injury limits of 100,000 per person, 300,000 per accident; uninsured motorist property damages limits of 50,000 per accident

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47] AND DENYING
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 49]**

with a 300 deductible; [and] underinsured motorist property damages limits of 50,000 per accident." Id. at 75-78.

The Esurance representative provided Mr. Beatty with a temporary password and instructed him "to go onto [the Esurance] website, just so [he could] accept the terms and the conditions of [the] policy and also any West Virginia state required forms." Id. at 81-82. The representative also specifically advised Mr. Beatty that he would be receiving "an e-mail from [Esurance] about [his] uninsured/underinsured motorist form that [he would] need to . . . print and sign and return to [Esurance] within 30 days." Id. at 83-84. At the conclusion of the call, the Esurance representative confirmed that the Beattys' insurance policy would go into effect at 12:01 A.M. on December 25, 2014, and reminded Mr. Beatty to fill out the requisite forms within 30 days. Id. at 85.

Thereafter, the Beattys received an email from Esurance that thanked them "for becoming an Esurance policyholder" and provided their "policy documents" (Dkt. No. 48-5).[1] On December 26, 2014, Esurance sent the Beattys another email that provided as follows:

---

[1] Mrs. Beatty testified that she thinks she also received the policy and insurance cards by U.S. mail sometime before January 24, 2015 (Dkt. No. 48-1 at 90). At that time, she reviewed the declarations page, which reflected the uninsured motorist and underinsured motorist coverages listed above. Id. at 94.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47] AND DENYING
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 49]**

> West Virginia requires us to send you the attached
> documents regarding your underinsured and uninsured
> motorist coverages. Please read the forms carefully and
> select limits for both coverages. Then, sign and date the
> forms and return them to us by email, mail, or fax within
> the next 30 days.

(Dkt. No. 48-6 at 2; 48-7 at 9). The attached documents explained

uninsured motorist ("UM") and underinsured motorist ("UIM")

coverage, and offered the Beattys an opportunity to select optional

limits for each type of coverage ("selection/rejection forms")

(Dkt. No. 48-6 at 4-5). The documents were not sent by U.S. mail

(Dkt. No. 48-7 at 9).

The Beattys also received several emails from Esurance during

the following months, advising them to log on and accept the terms

of their policy in order "[t]o maintain electronic delivery of

policy docs" (Dkt. Nos. 48-9; 48-10; 48-11; 48-12). Although the

Beattys received these e-mails at the address they provided, they

did not open or review many of the communications until after the

May 2015 accident (Dkt. Nos. 48-1 at 59-60; 48-15 at 2). In fact,

Mrs. Beatty testified that she "[p]retty much" disregarded e-mails

from Esurance (Dkt. No. 48-1 at 63).

"[I]f a customer does not log onto their policy and accept

terms and conditions" within 30 days, Esurance updates the delivery

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47] AND DENYING
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 49]**

method from electronic to paper (Dkt. No. 48-7 at 11, 14). When the Beattys did not accept the terms and conditions, on January 24, 2015, Esurance changed the Beattys' "policy document delivery method" to U.S. mail (Dkt. No. 48-19). Esurance also removed a paperless discount that had been applied to the Beattys' policy and sent an e-mail advising that it would charge their credit card an additional $7.52 on February 3, 2015 (Dkt. Nos. 48-19 at 2; 48-17). Mrs. Beatty reviewed this e-mail, but did not inquire about the charge (Dkt. No. 48-1 at 60).[2]

The Beattys did not return the selection/rejection forms within 30 days. Id. at 72, 125. As a result, on January 26, 2015, Esurance mailed the Beattys' an amended policy declarations page, effective January 28, 2015, which reflected that Esurance had removed UIM coverage and drastically reduced UM coverage (Dkt. Nos. 48-14 at 9-10; 48-16). The Beattys did not review the amended declarations page (Dkt. No. 48-1 at 97). In fact, Mrs. Beatty testified that she does not read renewal declarations pages because she assumes that her coverage will remain the same. Id. at 95. At this time, Esurance also issued a refund for the UIM premium (Dkt.

---

[2] The Beattys did not log in and accept the policy terms until May 22, 2015, following the accident (Dkt. No. 48-15 at 2).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47] AND DENYING**
**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 49]**

No. 48-14 at 9). Mrs. Beatty received an e-mail regarding the refund, but she did not inquire why Esurance issued it (Dkt. No. 48-1 at 114-15).

From that point forward, Esurance was of the opinion that it did not provide UIM coverage to the Beattys. On May 18, 2015, Mr. Beatty was involved in a head-on collision with one Sharlotta Wilson ("Wilson") while traveling on U.S. Route 50. Wilson was cited for failing to maintain control of her vehicle and driving the wrong way on a one-way road (Dkt. No. 1 at 3). Mrs. Beatty made a claim with Esurance on May 19, 2015 (Dkt. No. 48-1 at 278). Esurance denied the Beattys' claim for UIM coverage because it had been canceled when they failed to return the selection/rejection forms in January 2015. Id. at 278-302.

In May 2016, the Beattys filed this action against Esurance, alleging three claims: 1) declaratory relief, 2) breach of contract, and 3) bad faith (Dkt. No. 1 at 3-8). Following a scheduling conference, the Court directed the parties to submit cross briefs on the threshold question of whether the policy provided coverage (Dkt. No. 14). After receiving several extensions of time in which to do so (Dkt. Nos. 30; 34; 54), the parties filed

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47] AND DENYING
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 49]**

and briefed their competing motions for summary judgment, which are now ripe for review (Dkt. Nos. 47; 49).

## II.

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47] AND DENYING
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 49]**

necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. <u>Id.</u> at 248-52.

### III.

"A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits." <u>Volvo Const. Equip. N. Am. v. CLM Equip. Co., Inc.</u>, 386 F.3d 581, 599-600 (4th Cir. 2004) (citing <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 79 (1938)). Typically, in West Virginia, "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." Syl. Pt. 1, <u>Tennant v. Smallwood</u>, 568 S.E.2d 10 (W. Va. 2002). Although the policy in place at the time of the accident did not provide UIM coverage, the Beattys contend that it should nonetheless be applied due to Esurance's failure to comply with requirements of West Virginia law.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47] AND DENYING
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 49]**

**A.**

The parties first contest whether Esurance made an appropriate
offer of UIM coverage. In West Virginia, a policy or contract of
insurance "covering liability arising from the ownership,
maintenance or use of any motor vehicle" may not be issued unless
the insurer provides the insured with the option to purchase
certain amounts of UM and UIM coverage. W. Va. Code Ann. § 33-6-
31(a), (b) (West 2014).[3] These optional limits of coverage "shall
be made available to the named insured at the time of initial
application for liability coverage and upon any request of the
named insured on a form prepared and made available by the
insurance commissioner." Id. § 33-6-31d(a). Insurers may provide
the form to applicants by either "delivering the form to the
applicant or by mailing the form to the applicant together with the
applicant's initial premium notice." Id. § 33-6-31d(b).

If the applicant signs and returns the form, it "shall create
a presumption that such applicant and all named insureds received
an effective offer of the optional coverages . . . and that such
applicant exercised a knowing and intelligent election or

---

[3] The current version of the statute did not become effective
until June 8, 2015, after the accident at issue.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47] AND DENYING
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 49]**

rejection, as the case may be, of such offer as specified in the form." Id. In addition, if the applicant fails to return the form within 30 days, it is presumed that he "received an effective offer of the optional coverages" but "exercised a knowing and intelligent rejection of such offer." Id. § 33-6-31d(d).

If an insurer is not entitled to rely on these presumptions – for instance, because it failed to use the proper forms – it bears the burden to establish that "(1) it made a commercially reasonable offer of coverage to the insured, and (2) the insured's rejection of such coverage was knowing and intelligent." Thomas, 751 S.E.2d 278. An offer is commercially reasonable if it provides "adequate information to make an intelligent decision" by stating "in definite, intelligible, and specific terms, the nature of the coverage offered, the coverage limits, and the costs involved." Bias v. Nationwide Mut. Ins. Co., 365 S.E.2d 789, 791 (W. Va. 1987). If the insurer fails to establish a commercially reasonable offer and adequate rejection, the coverage "is included in the policy by operation of law." Id.

Here, it is undisputed that Esurance emailed the selection/rejection forms to the Beattys and canceled UIM coverage when they failed to return the forms within 30 days (Dkt. Nos. 48-

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47] AND DENYING
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 49]**

6; 48-19). The Beattys, however, contend that Esurance is not entitled to the statutory presumption that it made an effective offer of UIM coverage. After careful consideration, the Court concludes that none of the Beattys' arguments is persuasive.

*First*, the Beattys posit that Esurance failed to make UIM coverage available "at the time of the initial application" as required by W. Va. Code § 33-6-31d(a) (Dkt. No. 50 at 8-9). The Beattys apparently contend that Esurance could only have satisfied the "at the time" requirement by providing the selection/rejection forms electronically or placing them in transit during the online and telephone application (Dkt. No. 56 at 7).

As other courts have recognized, however, "this argument is untenable" because it is inconsistent with the statute, which expressly allows the selection/rejection forms to be sent with the applicant's first premium notice. <u>Massey v. 21st Century Centennial Ins. Co.</u>, No. 2:17-cv-01922, 2018 WL 1023108, at *5 (S.D.W.Va. Feb. 22, 2018); <u>see also</u> W. Va. Code Ann. § 33-6-31d(b) (West 2014). Read as a whole, the statute does not require that UIM coverage be offered the instant a person applies for liability coverage to be "at the time of the initial application."

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47] AND DENYING
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 49]

*Second*, the Beattys contend that Esurance failed to comply with W. Va. Code § 33-6-31d(b) by "mailing the form . . . together with the . . . initial premium notice" (Dkt. No. 50 at 9). That section also allows Esurance to comply by "delivering the form to the applicant," however, and it is undisputed that Esurance delivered the selection/rejection forms by email two days after the Beattys' purchase. Although the Beattys contend that there is no way "to determine how long after obtaining coverage" an insured has to send a UIM offer (Dkt. No. 56 at 6), delivery in this case was well within the period of time contemplated by the statute. Esurance delivered the forms to the Beattys by email during the same time that it would have taken to send them by U.S. mail with an initial premium notice. Therefore, Esurance provided the forms in compliance with W. Va. Code § 33-6-31d(b).

*Third*, the Beattys contend that Esurance improperly sent the selection/rejection forms by e-mail because it "did not have an express agreement to send documents electronically" (Dkt. No. 50 at 9-11). Under the Uniform Electronic Transactions Act ("UETA"), electronic records and signatures have the same legal effect as do non-electronic ones. W. Va. Code § 39A-1-7. Furthermore, "if parties agree to conduct a transaction by electronic means and a

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47] AND DENYING
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 49]**

law requires a person to provide, send or deliver information in writing to another person, the requirement is satisfied if the information is provided, sent or delivered, as the case may be, in an electronic record." Id. § 39A-1-8(a). "Whether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct." Id. § 39A-1-5(b). The West Virginia Insurance Commissioner has confirmed that selection/rejection forms may be "presented, completed and returned electronically in compliance with the provisions of the UETA" (Dkt. No. 48-21).

Here, the context and surrounding circumstances indicate that the Beattys consented to do business electronically. Although the Beattys contend that "Ms. Beatty informed Esurance that she wanted to receive policy documents via U.S. Mail" (Dkt. No. 50 at 10), they mischaracterize the evidence. Mrs. Beatty may have testified that she "asked [Esurance] to communicate with [her] through the U.S. mail" (Dkt. No. 48-1 at 49), but this statement is largely nullified by her subsequent concession that she "just believe[s] that that's what [she] would've selected." Id. at 76. Indeed, there is no documentary evidence supporting the Beattys' contention other than a screenshot of their delivery preference that was not taken

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47] AND DENYING
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 49]

until after the accident (Dkt. Nos. 48-1 at 76; 48-15). By
contrast, the record of policy activity demonstrates that delivery
by U.S. mail was not selected until January 24, 2015, after
Esurance sent the selection/rejection forms (Dkt. No. 48-19).

Moreover, despite the fact that the Beattys did not execute a
consent to transact business electronically until June 19, 2015
(Dkt. No. 48-7 at 6), they consented by their conduct during the
application process. During the course of procuring insurance
through Esurance, the Beattys completed an online application,
created an online account, and electronically signed a credit card
authorization that referenced email communications (Dkt. No. 48-1
at 48-57). By Mrs. Beatty's own testimony, she intended to use the
online account to pay her premium when it came time to renew the
policy. Id. at 49. Critically, when repeatedly informed by an
Esurance representative that he would be receiving the
selection/rejection forms by e-mail, Mr. Beatty did not protest
electronic delivery (Dkt. No. 48-2 at 83-86). Therefore, the
uncontested context and circumstances of this case are more than

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47] AND DENYING
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 49]**

sufficient to evidence that the Beattys consented to conduct

business electronically. <u>See</u> W. Va. Code § 39A-1-5(b).[4]

In sum, the Beattys are incorrect that Esurance failed to

comply with the requirements for offering UIM coverage at the time

of their application. Therefore, Esurance is entitled to the

statutory presumption that it provided an effective offer of UIM

coverage, and that the Beattys exercised a knowing and intelligent

rejection. W. Va. Code § 33-6-31d(b).

**B.**

The Beattys nonetheless contend that they can overcome the

statutory presumption because they were not required to return the

selection/rejection form (Dkt. No. 50 at 11). The form is addressed

as follows:

        **TO:**   <u>**PROPOSED POLICYHOLDERS (APPLICANT):**</u>

---

[4] The Supreme Court of Appeals of West Virginia has not dealt
with this situation, but the Court's conclusion is consistent with
a number of decisions that apply similar statutes. <u>See, e.g.</u>,
<u>Progressive Advanced Ins. Co. v. Corekin</u>, No. CV DKC 16-1340, 2017
WL 4122821, at *9 (D. Md. Sept. 18, 2017) ("[A] person who
initiates a transaction electronically, signs a standard form
electronically, and conducts all business electronically can later
be bound to conduct business electronically because the facts and
circumstances demonstrate an agreement to conduct transactions
electronically."); <u>Traynum v. Scavens</u>, 786 S.E.2d 115, 120-21 (S.C.
2016) ("Traynum agreed to interact with Progressive electronically
by choosing to purchase insurance through Progressive's website.").

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47] AND DENYING
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 49]**

> **IF YOU DO NOT RETURN THIS FORM TO YOUR INSURER WITHIN
> THIRTY (30) DAYS IT MEANS YOU HAVE DECIDED NOT TO BUY
> OPTIONAL UNDERINSURED COVERAGES OR OPTIONAL LIMITS OF
> UNINSURED MOTORIST COVERAGE ABOVE THAT REQUIRED BY LAW.**
>
> **OR**
>
> **<u>PRESENT POLICYHOLDERS</u>:**
>
> **IF YOU DO NOT RETURN THIS FORM TO YOUR INSURER WITHIN
> THIRTY (30) DAYS IT MEANS YOUR COVERAGE WILL STAY THE
> SAME AS IT IS NOW. THIS IS AN OPPORTUNITY TO CHANGE THE
> COVERAGE YOU PRESENTLY HAVE.**

(Dkt. No. 48-6 at 3). The Beattys argue that they were "present policyholders" when they received the selection/rejection form, and thus were not required to return it in order to maintain the UIM coverage they initially had selected (Dkt. No. 50 at 13).

The Southern District of West Virginia addressed a similar argument in <u>Bailey v. Geico General Insurance Co.</u>, No. 2:05-0806, 2010 WL 2643380 (S.D.W.Va. June 29, 2010) (Copenhaver, J.). There, the insured purchased automobile insurance that included UM and UIM coverage. Following his telephone purchase, GEICO mailed the insured a "new business package" that included his "as-yet ineffective insurance policy," his initial premium notice, and selection/rejection forms. <u>Id.</u> at 7. When the insured did not return the selection/rejection form within 30 days, GEICO adjusted his UM coverage and premium to the mandatory minimum limits. <u>Id.</u> at

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47] AND DENYING
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 49]**

*2. The Southern District subsequently rejected the insured's argument that he had been a "present policyholder" when he received the forms. It reasoned that the insured was an "applicant" because he did not have an effective insurance policy and had not tendered any payment to GEICO. Id. at *7. Therefore, the court concluded that the insured had not overcome the statutory presumption. Id.

Here, the Beattys already had an effective insurance policy for which they had paid Esurance when they received the selection/rejection form. Viewed in isolation, these facts make it understandable that the Beattys might have believed that they were present policyholders when they received the form. See Bailey, 2010 WL 2643380, at *7. However, an Esurance representative expressly advised the Beattys during the application process that they needed to review and return additional forms related to UM and UIM coverage (Dkt. No. 48-2 at 83-86). Under these circumstances, there can be no doubt that the forms were part of the application process, which the Beattys simply chose to ignore.

**C.**

In the alternative, the Beattys contend that UIM coverage should apply under the doctrine of reasonable expectations (Dkt. No. 50 at 14-16). More specifically, they argue that Esurance

"fostered confusion and misconceptions" by sending multiple selection/rejection forms, as well as "spam mail," over the life of the policy. Id. at 16. The Beattys' reliance on the doctrine of reasonable expectations is misguided.

"With respect to insurance contracts, the doctrine of reasonable expectations is that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though a painstaking study of the policy provisions would have negated those expectations." Syl. Pt. 6, New Hampshire Ins. Co. v. RRK, Inc., 736 S.E.2d 52 (W. Va. 2012) (quoting Syl. Pt. 8, Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc., 356 S.E.2d 488 (1987), overruled on other grounds by Potesta v. U.S. Fid. & Guar. Co., 504 S.E.2d 135 (1998)). Typically, the doctrine "is limited to those instances . . . in which the policy language is ambiguous." Jenkins v. State Farm Mut. Auto. Ins. Co., 632 S.E.2d 346, 352 (W. Va. 2006) (quoting Nat'l Mut., 356 S.E.2d at 496).

Even when the policy language is unambiguous, however, "procedures which foster a misconception about the insurance to be purchased may be considered with regard to the doctrine of reasonable expectations." Costello v. Costello, 465 S.E.2d 620, 623

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47] AND DENYING
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 49]**

(W. Va. 1995) (quoting <u>Keller v. First Nat'l Bank</u>, 403 S.E.2d 424

(W. Va. 1991)). In other words, the doctrine applies to cases "in

which a policy provision on which denial of coverage is based

differs from the prior representations made to the insured by the

insurer." <u>New Hampshire Ins. Co.</u>, 736 S.E.2d at 58.

In <u>New Hampshire Insurance, Co. v. RRK, Inc.</u>, for example, the

insured sought coverage for "a floating barge and two strings of

docks." When the insured asked for "a copy of the coverage forms of

the proposed policy," the insurer faxed the insured a 17-page

document that it called "the coverage forms." <u>Id.</u> at 55. After

reviewing the coverage forms, the insured completed his application

and purchased insurance. The policy that then issued in September

2007 included an exclusion for "wear, tear, and/or gradual

deterioration" that was not listed on the coverage forms, and it

also failed to list the barge and its contents as insured property.

<u>Id.</u>

Although the insured received a copy of the policy by mail, he

did not review it. In April 2008, the insurance agent realized that

the insurer had failed to list the barge as covered property, at

which time he communicated this error to the insurer and assured

the insured that it would be corrected. <u>Id.</u> at 55-56. In September

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47] AND DENYING
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 49]**

2008, however, the insurer issued a renewed policy that again failed to list the barge as covered property, and also included the "wear-and-tear exclusion" present in the initial policy. The insured received but did not review the renewed policy. In February 2009, "the barge sank into the Ohio River." Although the insurer determined that the barge was covered property, it denied coverage under the wear-and-tear exclusion. Id. at 56.

The insured filed suit against the insurer, arguing that the wear-and-tear exclusion did not apply because it was not listed in the 17-page document provided prior to purchasing the policy. The Supreme Court of Appeals acknowledged that the case "involve[d] a discrepancy between materials provided to [the insured] prior to purchasing the policy and the policy that was actually issued." Id. at 57. Due to this discrepancy, the court found substantial factual questions regarding whether "the insured had an objectively reasonable expectation of coverage under the insurance contract," and remanded the case for further consideration of whether the insured was "objectively reasonable in relying solely on the 17-page fax as containing all of the terms of their insurance contract with [the insurer] and in failing to review the actual policy mailed to it on two occasions." Id. at 58-59.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47] AND DENYING
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 49]**

Here, there was no objectively reasonable basis for the Beattys' misconception regarding UIM coverage because there was no "discrepancy between materials provided . . . prior to purchasing the policy and the policy that was actually issued." <u>Id.</u> at 57. The parties do not dispute that the Beattys purchased and paid for UIM coverage on December 24, 2014. At the same time, however, an Esurance representative advised Mr. Beatty that he would be receiving the selection/rejection forms by email, and would need to return them within 30 days (Dkt. No. 48-2 at 83-85). Had the Beattys reviewed the email and forms as they were instructed to do during the application process, they would have known that it was crucial to "read the forms carefully and select limits for both [UM and UIM] coverages," and that their failure to return the form would be interpreted as a rejection of such optional coverage (Dkt. No. 48-6 at 2-3). When Esurance canceled UIM coverage, it refunded the related premium and sent the Beattys an amended policy and declarations page (Dkt. Nos. 48-14 at 9-10; 48-16).

Although the status of the Beattys' UIM coverage changed between their initial application and the accident at issue, they have not pointed to a difference between Esurance's representations

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47] AND DENYING
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 49]

and the ultimate lack of UIM coverage. Therefore, the doctrine of reasonable expectations does not apply in this case.

**D.**

Finally, the Beattys contend that Esurance is equitably estopped from denying UIM coverage (Dkt. No. 50 at 16). In West Virginia, the doctrine of equitable estoppel applies in the following circumstances:

> [T]here must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice.

Syl. Pt. 1, <u>First Am. Title Ins. Co. v. Firriolo</u>, 695 S.E.2d 918 (W. Va. 2010) (quoting Syl. Pt. 6, <u>Stuart v. Lake Washington Realty Corp.</u>, 92 S.E.2d 891 (W. Va. 1956)).

Here, the Beattys' equitable estoppel argument falters on the first element because there is no evidence that Esurance made a false representation or concealed material facts. The Beattys contend only that Esurance misrepresented that they had purchased UIM coverage (Dkt. No. 50 at 16). But the parties do not dispute that the Beattys purchased UIM coverage, and that they initially

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47] AND DENYING
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 49]**

received a declarations page that included the coverage. The coverage became effective on December 25, 2014, and was canceled when the Beattys failed to return the selection/rejection forms within 30 days, at which time Esurance refunded the UIM premium and forwarded an amended policy and declarations page. See supra Part I. That the Beattys believe this cancellation was legally inappropriate does not render false Esurance's representation that they initially had purchased and paid for UIM coverage.

### IV. CONCLUSION

For the reasons discussed, the Court:

1) **GRANTS** the defendants' motion for summary judgment (Dkt. No. 47);

2) **DENIES** the plaintiffs' motion for partial summary judgment (Dkt. No. 49);

3) **DECLARES** that the Beattys' policy does not provide underinsured motorist coverage; and

4) **DISMISSES** the plaintiffs' remaining claims **AS MOOT.**

It is so **ORDERED.**

The Court directs the Clerk to enter a separate judgment order and to transmit copies of both orders to counsel of record.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 47] AND DENYING
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 49]**

DATED: July 17, 2018

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE